Dana M. WOJTKOWSKI, Plaintiff,
Appellant,

v.

Richard K. CADE, et al., Defendants,
Appellees.

No. 83–1612.

United States Court of Appeals,
First Circuit.

Argued Dec. 7, 1983.

Decided Jan. 13, 1984.

Rehearing and Rehearing En Banc
Denied Feb. 1, 1984.

128

Louis Kerlinsky, with whom Louis Kerlinsky, P.C., Springfield, Mass., was on brief, for plaintiff, appellant.

Kevin B. Coyle, East Longmeadow, Mass., for defendants, appellees.

Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

In this appeal, Wojtkowski takes exception to the amount of the attorney's fee which the district court awarded to him after his successful prosecution of a civil rights action. 42 U.S.C. § 1988. Besides contending that the fee is inadequate, he also asserts that the district court improperly denied prejudgment interest both on the damages and on the fee. We affirm.

Wojtkowski sued the town of Montague, Massachusetts, its police chief and three police officers for $200,000 compensatory damages based on an incident involving his arrest and detention. The district court directed verdicts on the claims against the town and the police chief, but sent to the jury the claims that the three police officers had violated plaintiff's right to due process and had committed state law torts including assault, battery, malicious prosecution and false imprisonment. The jury found for Wojtkowski in the total amount of $6,000. Of this, $5,000 was charged to one defendant, $500 each to the other two.

After entry of judgment, Wojtkowski sought prejudgment interest on the damages pursuant to Mass.Gen.Laws ch. 231,

§ 6B. The district court rejected this request, relying on the federal rule that assessment of prejudgment interest is a matter for the jury. *Furtado v. Bishop,* 604 F.2d 80, 98 (1st Cir.1979) (*Furtado I*), *cert. denied,* 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980) (section 1983 case); *Robinson v. Pocahontas, Inc.,* 477 F.2d 1048, 1053 (1st Cir.1973). As plaintiff had not raised the issue prior to submission of the case to the jury, the court ruled that the claim was now foreclosed.

Wojtkowski also sought costs, an attorney's fee, and prejudgment interest on the fee, in the total sum of $19,259.10. The court allowed costs of $135 and a fee of $3,870 but denied prejudgment interest with respect to the fee.

### I. *Prejudgment Interest*

Appellant argues that in denying prejudgment interest on damages the district court incorrectly relied upon *Furtado I,* 604 F.2d at 98, and *Robinson,* 477 F.2d at 1053, since those cases involved purely federal claims. As his case puts forward both federal and pendent state claims, he asserts that the matter of prejudgment interest is governed by a Massachusetts statute, Mass. Gen.Law ch. 231, § 6B, which requires the clerk to add prejudgment interest to the amount of damages awarded in personal injury cases. Plaintiff finds support for this position in *Moore-McCormack Lines v. Amirault,* 202 F.2d 893, 895–96 (1st Cir. 1953), in which this court suggested that in a "typical diversity case" a district court, applying Massachusetts substantive law, would be required to add prejudgment interest to a damages award, as such interest "may be regarded as part of the substance of the claim sued upon."

However, plaintiff has not sued here in diversity, nor could he. Federal jurisdiction is based on his assertion of a federal civil rights claim. 28 U.S.C. §§ 1331, 1343. To be sure, plaintiff asserted pendent state claims, and perhaps, although we do not decide the point, he would have been entitled to collect prejudgment interest on these under the Massachusetts statute had

the jury returned separate verdicts. But here all claims, both federal and state, were sent to the jury together, resulting in a general verdict. We cannot tell to what extent, if any, the jury's awards of damages against the three officers were based on the state law claims. In such circumstances, the district court was right to follow the federal rule concerning prejudgment interest, and the court properly construed that rule as requiring the denial of interest here where the matter had not been presented to the jury.

Wojtkowski's claim that he was entitled to prejudgment interest on the amount allowed by the court as an attorney's fee under section 1988 has even less force. Section 1988 does not refer to interest, nor has our attention been drawn to any federal statute that calls for prejudgment interest in this particular context. The cases Wojtkowski cites are inapposite. *Harkless v. Sweeny Independent School District,* 466 F.Supp. 457, 465, 472 (S.D.Tex.1978), relates only to interest on prejudgment expenses. *Gates v. Collier,* 616 F.2d 1268 (5th Cir. 1980), indicates merely that the district court may assess postjudgment interest on a fee award where there has been an unwarranted delay in payment. *See also Gabriele v. Southworth,* 712 F.2d 1505, 1508 n. 1 (1st Cir.1983), *aff'g Brule v. Southworth,* 552 F.Supp. 1157, 1168 (D.R.I.1982) (Pettine, J.); *Spain v. Mountanos,* 690 F.2d 742, 747–48 (9th Cir.1982); *cf. Furtado v. Bishop,* 635 F.2d 915, 920 (1st Cir.1980) (*Furtado II*) ("delay in payment" may be factor in adjusting the lodestar amount). One case, not cited by plaintiff, which deals with prejudgment interest on attorneys' fees holds that "[g]enerally, no prejudgment interest should be paid . . . ." *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir.1983).

We are also unpersuaded by appellant's invocation of Mass.Gen.Laws ch. 231, § 6B. That statute authorizes a court to assess interest on the amount of damages; it says nothing about attorneys' fees. The district court did not err in denying appel-

lant's request for prejudgment interest on his attorney's fee award.

## II. *Attorney's Fee*

We have reviewed appellant's challenge to the district court's determination of the attorney's fee and find no "error of law or abuse of discretion." *Furtado II,* 635 F.2d at 920.

■ The court was not obligated, as appellant asserts, to adopt the rate and hours claimed by his attorney, merely because the defendants failed to oppose his fee request or challenge his attorney's affidavit. We read 42 U.S.C. § 1988 (under which the court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs") to confer both responsibility and authority upon the court to control the reasonableness of the fee. A party's failure to oppose a fee does not divest the court of power to determine what is a reasonable fee and to allow only that amount. The court, moreover, may bring to bear its knowledge and experience concerning both the cost of attorneys in its market area and the time demands of the particular case. If the time and fee claimed by the prevailing party are out of line, the court may "shave" either or both. *Miles v. Sampson,* 675 F.2d 5, 9 (1st Cir.1982).

■ Here the district court determined that 60 hours were "reasonably expended on the lawsuit," not the 112.5 hours demanded. Although this is a substantial decrease in hours, we cannot say that it is wrong. The district court "has intimate knowledge of the services rendered" and the actual demands of the case as tried. *McManama v. Lukhard,* 616 F.2d 727, 729 (4th Cir.1980). The reductions here were designed to delete charges for work performed on unsuccessful claims against the town and police chief as well as "duplicative" effort, a term we have previously interpreted as "implying . . . little value." *Miles v. Sampson,* 675 F.2d at 8.

The claims against the town of Montague and its police chief rested on legal theories distinct from those upon which appellant prevailed. The town and chief were said to be liable not because they were in any sense directly involved in the conduct giving rise to the damages award, but because they allegedly provided inadequate training and slack supervision. These claims involved novel and difficult legal issues not present in the claims against the officers. The Supreme Court has recently upheld the rule of this Circuit that "[w]here plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claims should be excluded in considering the amount of a reasonable fee." *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983); *see also Miles v. Sampson,* 675 F.2d at 8.

■■ Appellant argues that the court excluded too many hours for this reason. The affidavit submitted by appellant's attorney, however, did not show how much of the time he spent on prevailing issues. We have repeatedly warned that

we would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims.

*Nadeau v. Helgemoe,* 581 F.2d 275, 279 (1st Cir.1978); *see also Miles v. Sampson,* 675 F.2d at 8. The affidavit here was little more than a tally of hours and tasks relative to the case as a whole. Attorneys who anticipate requesting their fees from the court would be well advised to maintain detailed, contemporaneous time records that will enable a later determination of the amount of time spent on particular issues. *Cf. Ramos v. Lamm,* 713 F.2d at 553 (requiring lawyers seeking a fee award under 42 U.S.C. § 1988 to maintain "meticulous, contemporaneous time records"); *New York Association for Retarded Children v. Carey,* 711 F.2d 1136, 1147–48 (2d Cir.1983) (announcing "for the future" that "contemporaneous time records are a prerequisite for attorney's fees in this circuit"); *Nation-*

al *Association of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1327 (D.C.Cir.1982) (warning that "[a]ttorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records").

Appellant also objects to the court's assignment of $75 per hour for core legal work and $40 per hour for other work as "reasonable hourly rate[s]" in the lodestar calculation instead of his attorney's asserted rate of "about" $125 per hour for all services. The district court acted within its authority in distinguishing hourly rates based upon the type of work performed. *King v. Greenblatt,* 560 F.2d 1024, 1027 (1st Cir.1977); *Wuori v. Concannon,* 551 F.Supp. 185, 195 (D.Me.1982) (Gignoux, J.) (the fact that certain services were actually "performed by an attorney should not affect the rate"). The court was entitled to draw on its own knowledge of attorneys' fees in the Springfield, Massachusetts area, where it regularly sits, in arriving at reasonable hourly rates for the lodestar calculation.[1] Nothing provided by appellant establishes clear error in this regard.

Appellant complains that the court erred by not upwardly adjusting the lodestar amount to reflect the difficulties plaintiffs' attorneys encounter in obtaining favorable verdicts in police brutality cases. However, this was a matter for the informed discretion of the district court, which was in a better position than ourselves to judge the difficulties likely encountered in the context of this case.

The nearly $4,000 granted below was substantially more than the $2,500 to which appellant's attorney would have been entitled under a contingency fee agreement executed at the outset of the case. While a contingency agreement is not controlling under section 1988—it being altogether possible that actual damages are small but the constitutional violation complained of egre-

gious—still the size of the recovery is one factor, among many, to be weighed. Here appellant sought only compensatory, not punitive, damages and the court found that the damages awarded were fair in light of the evidence. It is thus of some relevance that the fee was equivalent to almost two-thirds of that recovery.

Where, as here, it appears that the district court carefully weighed the correct factors and arrived at a result within a supportable range, we will not interfere. *King v. Greenblatt,* 560 F.2d 1024, 1028 (1st Cir.1977).

*Affirmed.*

---

1. Attorneys may, of course, inform the court's analysis by providing evidence of their customary billing rates and of prevailing rates in the community. *See, e.g., Ramos v. Lamm,* 713 F.2d at 555; *cf. National Association of Con-* cerned Veterans v. Secretary of Defense, 675 F.2d at 1324–27 (requiring an applicant for fees to "provide specific evidence of the prevailing community rate for the type of work for which he seeks an award").