Arthur DOTY, Plaintiff, Appellee,

v.

Richard SEWALL, et al.,
Defendants, Appellants.

Arthur DOTY, Plaintiff, Appellant,

v.

Richard SEWALL, et al.,
Defendants, Appellees.

Nos. 89–1305, 89–1675.

United States Court of Appeals,
First Circuit.

Heard Jan. 9, 1990.
Decided July 17, 1990.

Gabriel O. Dumont, Jr., with whom Dumont and Morris, Boston, Mass., was on brief, for Richard Sewall.

Mark D. Stern, P.C., Somerville, Mass., with whom Michael Altman, Silverglate, Gertner, Fine and Good, Boston, Mass., Arthur Fox, Public Citizen Litigation Group, Washington, D.C., were on brief, for Arthur Doty.

Before BREYER, Chief Judge, and TORRUELLA and CYR, Circuit Judges.

TORRUELLA, Circuit Judge.

Local 42, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Richard Sewall, the former secretary-treasurer of Local 42, and the Estate of Frank Salemme,[1] the former president of Local 42, (hereinafter collectively referred to as "Local 42"), appeal from the judgment entered by the United States District Court for the District of Massachusetts, and request that a new trial be granted. Arthur Doty cross-appeals from the district court's decision to deny an award of prejudgment interest. For the reasons discussed below, we affirm the district court's decision on all issues raised, with one exception.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying Local 42's contentions are not new to this court. Having previously dealt with another aspect of this case, and recited therein the relevant facts in some detail, we content ourselves here with only a brief factual summary. The interested reader is referred to *Doty v. Sewall*, 784 F.2d 1 (1st Cir.1986), for a more complete exposition.

In September, 1980, Arthur Doty, who characterizes himself as a "vocal critic" of the Teamsters, sought entry into Local 49. There is some argument about whether he was properly admitted into that Local, but the litigation centered around Doty's subsequent application to, and membership in, Local 42. The case essentially involved three claims under the Landrum–Griffin Act, 29 U.S.C. § 153, *et seq.*[2] Doty charged that Local 42, through its officers, Sewall and Salemme, unlawfully delayed Doty's transfer into Local 42, that these same defendants mistreated Doty once he became a member with regard to his participation in union meetings, and that, during the course of the litigation, they unlawfully removed him as union steward at his place of employment. Doty also accuses Sewall of assault and battery, and raises a state civil rights claim.

---

**1.** Shortly before trial, Frank Salemme died, and his estate was substituted as a defendant. Hereafter, Frank Salemme and his estate will both be referred to as "Salemme."

**2.** This Act is also commonly known as the Labor–Management Reporting and Disclosure Act ("LMRDA"). The two names will be used interchangeably.

After finding against all three defendants on all three Landrum–Griffin claims, the jury awarded Doty $250,000 in compensatory damages, as well as $150,000 in punitive damages against Local 42, $100,000 against Sewall and $50,000 against the Estate of Frank Salemme. Doty also received $2,000 on the assault and battery claim.

As part of the district court's rulings on post-trial motions, the court rescinded its prior award of prejudgment interest on the compensatory award, which was reduced to $210,000 as a result of a $40,000 settlement involving other defendants who are neither part of this case, nor part of this appeal. The court also rescinded its earlier award of prejudgment interest on the damages granted for the assault. All parties appeal.

## II. DID IMPROPER CONDUCT AT TRIAL WARRANT A NEW TRIAL?

On appeal, Local 42 contends that the jury's verdict should be vacated, and that a new trial should be granted, because, during the course of the twelve day trial, Doty presented approximately thirty-seven items of allegedly impermissible evidence or argument which prejudiced the jury. These thirty-seven items can be grouped into four subject headings for purposes of analysis, and we discuss them below, *seriatim.*

### A. *Stereotyping the Teamsters*

Local 42 argues that, throughout the trial, Doty presented testimony, exhibits and statements of counsel which were not only inadmissible, but which also were intended to play on the prejudices of the jury by reinforcing a stereotype of the Teamsters' leadership as criminal, violent and mob connected. It complains that Doty's attorney's references to the Teamsters as a tightly run, Stalinist-type organization, and his association of the Teamsters with Hitler by reading an article in a newsletter referring to Hitler, were so prejudicial that a new trial is mandated.

Doty contends that Local 42 exaggerates the significance of the allegedly impermissible evidence and argument, and thus that

the district court did not commit error by refusing to grant Local 42's motions for a new trial or judgment notwithstanding the verdict. We agree.

■ We note, first, that of the fifteen items of allegedly impermissible argument or evidence presented, Local 42 failed to object to twelve of them when made or offered.[3] Although Local 42 made a motion *in limine* to exclude much of the disputed evidence, the district court did not grant the entirety of the motion, preferring to defer judgment until the evidence was offered at trial. This court has recently held that a pre-trial motion *in limine* is not sufficient to preserve an issue for appeal where the district court declines to rule on the admissibility of the evidence until the evidence is actually offered. *United States v. Vest,* 842 F.2d 1319, 1326 (1st Cir.), *cert. denied,* 488 U.S. 965, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988). *See also Wilson v. Waggener,* 837 F.2d 220, 222 (5th Cir.1988); *Hendrix v. Raybestos–Manhattan, Inc.,* 776 F.2d 1492, 1502–04 (11th Cir.1985); *Collins v. Wayne Corp.,* 621 F.2d 777, 784 (5th Cir.1980); J. Weinstein & M. Berger, 1 *Weinstein's Evidence* ¶ 103[02] at 103–17 to –20 (1989); Fed.R. Civ.P. 103(a)(1). *But see Sheeny v. Southern Pac. Transp. Co.,* 631 F.2d 649, 652–53 (9th Cir.1980); *American Home Assur. Co. v. Sunshine Supermarket, Inc.,* 753 F.2d 321, 324 (3d Cir.1985). We do not diverge from that rule today. Since we find that "a timely objection or motion to strike ... stating the specific ground of objection," Fed.R.Evid. 103(a)(1), was not made with regard to twelve of the claims of error, the issues were not properly preserved for appeal. *See United States v. Figueroa,* 818 F.2d 1020, 1025–26 (1st Cir.1987); *Lakin v. Daniel Marr & Son Co.,* 732 F.2d 233, 236 (1st Cir.1984); *Gagliardi v. Flint,* 564 F.2d 112, 116 (3d Cir.1977), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978).

Absent substantial injustice, error cannot be predicated on a ruling that admits or excludes evidence, when an objection to the

---

**3.** Of these twelve items, the district court struck two of them *sua sponte.*

ruling was not made at trial. Fed.R.Civ.P. 61; Fed.R.Evid. 103(a), (d); J. Weinstein & M. Berger, 1 *Weinstein's Evidence* ¶ 103[02] at 103–8. Upon review, we see no plain error on the part of the district court in permitting the admission of evidence, largely in the form of testimony, of which Local 42 now complains.

 Of the three evidentiary items actually objected to at trial, and thus reviewable by this court, Fed.R.Evid. 103(a)(1), two of the objections were granted, thus leaving only one item subject to our scrutiny.[4] At trial, Local 42 objected, after extensive testimony about the organizational structure of the Teamsters, to the witness being asked how the Teamsters were run, *i.e.,* in an autocratic or dictatorial fashion. The district court overruled the objection on the grounds that, because the witness had already extensively testified about the Union, he was entitled to give his personal opinion about the way the Teamsters were run.

 Under Fed.R.Evid. 103(a), this court must review a challenged evidentiary decision to determine whether "a substantial right of the party is affected." "When evidence is charged to have been improperly admitted, any error is more likely to be found harmful, and thus reversible, if the evidence is substantively important, inflammatory, repeated, emphasized, or unfairly self-serving." S. Childress & M. Davis, 1 *Standards of Review* 239 (1986). As this court has previously espoused, no substantial right of the party is affected where the evidence admitted was cumulative as to other admitted evidence. *Garbincius v. Boston Edison Co.,* 621 F.2d 1171 (1st Cir. 1980). Finding, as we do, that the testimo-

ny was cumulative, and thus did not affect a substantial right of Local 42, we need not decide whether the decision to admit the evidence was error. Even if it was error, the error was harmless. Fed.R.Evid. 103(a).

## B. *Wrong-doing by Non–Defendants*

Local 42 next contends that Doty introduced evidence of his and other Teamster members' alleged mistreatment by Locals other than Local 42 to show the likelihood of Local 42 misconduct in this case, and that such evidence should have been excluded. Doty argues that this evidence was probative with regard to his theory that Local 42 was part of a Teamster conspiracy to suppress dissent by a group calling itself the Teamsters for a Democratic Union ("TDU"). Local 42 responds that, as the district court noted, no conspiracy theory was alleged by Doty at any time prior to trial.

Although this court has made it clear that evidence of prior bad acts is inadmissible to show that a defendant acted in conformity therewith, *Lataille v. Ponte,* 754 F.2d 33 (1st Cir.1985) (referring to Fed.R. Evid. 404(b)), we have difficulty in accepting Local 42's claim of error now when it failed to make appropriate objections at trial. Despite the assurances of the district court that it would exclude evidence of misconduct of Teamsters who were not defendants, of the sixteen allegations of error made to this court, Local 42 made only about half of them at trial. Finding that no substantial right of the party was affected by the admission of the evidence not objected to, for the same reasons detailed above, *see* Fed.R.Evid. 103(a), we review

4. At trial, Local 42 did not move for a mistrial on the basis that the testimonial evidence regarding alleged corruption on the part of the Teamsters uttered prior to the objection was unfairly prejudicial. In any case, the matter of declaring a mistrial or granting a new trial based on improper statements or jury arguments is committed to the sound discretion of the district court. *United States v. Sudderth,* 681 F.2d 990, 996 (5th Cir.1982); *Standard Indus., Inc. v. Mobil Oil Corp.,* 475 F.2d 220, 228–29 (10th Cir.), *cert. denied,* 414 U.S. 829, 94 S.Ct. 55, 38 L.Ed.2d 63 (1973); *Sanitary Milk Producers v. Bergjans Farm Dairy, Inc.,* 368 F.2d 679

(8th Cir.1966). As such, the failure to declare a mistrial or to grant a new trial is reviewable only for abuse of discretion. *Caldarera v. Eastern Airlines, Inc.,* 705 F.2d 778, 781 (5th Cir. 1983). Upon careful review of the record, we find no abuse of discretion in the district court's failure to have declared a mistrial or granted a new trial, and, in doing so, note that it is significant that such motions were not made by Local 42 below. *See id.* at 782 (failure to move for mistrial is significant because, "[b]y doing so ... [the party] got a chance to see the verdict and then to seek to overturn it.")

only those eight items to which objection was made below.

Local 42 objected to admission of evidence relating to Doty's assertion that he was fired from his job at the request of Local 25. One such evidentiary submission related to an article regarding the firing of Arthur Doty, on which the court instructed the jury twice, once before the evidence was offered, and again after it was admitted, that the document was not offered to prove the truth or falsity of its contents, but only for the fact that Doty was associated with its publication. On another occasion, the court permitted a witness to testify about the circumstances surrounding his lay-off from a job within Local 42's jurisdiction. Doty was also permitted to introduce evidence, over objection, regarding the harassment of TDU supporters at a Teamsters convention. Finally, the court allowed Doty to introduce evidence regarding his assault by Local 829 members.

■ The district court ruled that, while there was insufficient evidence to support a conspiracy theory, statements or actions of non-defendants which were communicated to Local 42 "may be at least *prima facie* admissible to show motive for mistreatment of a plaintiff." The Federal Rules of Evidence provide three exceptions to the general rule that evidence of prior conduct is inadmissible—one is relevant here. Under Fed.R.Evid. 404(b), evidence of prior acts is admissible to show motive. Although the evidence must specifically be found to be more probative than prejudicial, it is the district court which has the discretion to decide such matters. *E.g., Lataille v. Ponte*, 754 F.2d at 36; *United States v. Fosher*, 568 F.2d 207, 212–13 (1st Cir.1978).

■ Upon review, we find that the district court properly balanced the probative value of the evidence on the question of motive and later likelihood of conduct in accordance with that motive against its prejudicial effect. Fed.R.Evid. 403. As this court has repeatedly made clear, "the admission and exclusion of evidence is primarily within the discretion of the trial judge, and this determination will not be

disturbed absent a showing of abuse of discretion." *Harrington v. United States*, 504 F.2d 1306, 1313 (1st Cir.1974) (application of the best evidence rule). *See, e.g., Jon–T Chems., Inc. v. Freeport Chem. Co.*, 704 F.2d 1412, 1417 (5th Cir.1983); *United States v. Wheeler*, 444 F.2d 385 (10th Cir. 1971). As one commentator has noted, "courts ... appear to state even higher deference for certain types of evidence calls, perhaps those that show an unusual amount or depth of true discretion or choice. Federal Rule of Evidence 403 is the most common example." S. Childress & M. Davis, 1 *Standards of Review* 233 (1986). *See Szeliga v. General Motors Corp.*, 728 F.2d 566, 567 (1st Cir.1984); *United States v. McNeill*, 728 F.2d 5, 12–13 (1st Cir.1984). *See also United States v. Long*, 574 F.2d 761, 767 (3d Cir.) ("[i]f judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal"), *cert. denied*, 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978).

It is significant that the eight assignments of error occurred during the course of an eleven day trial. The district court was clearly in a better position than this court to assess the prejudicial effect of the evidence, and we find no abuse of its discretion in the decision to admit the items. Finally, we note that any prejudicial effect which the evidence may have had was substantially ameliorated by the district court's firm instruction that the Local 42 defendants could not be held accountable for the actions of other persons.

### C. Doty's Vietnam Experience

Local 42 next argues that Doty should not have been permitted to introduce evidence about his Vietnam service, because it was not relevant and could only have been an attempt to elicit the jury's sympathy. Local 42 also objects to Doty's counsel's actions during his closing argument, which, Local 42 contends, played on this military service with emotional statements referring to efforts by the "communist-like, dictatorial Teamsters to suppress the efforts

of Doty, the decorated veteran who was devoted to democracy."

■ Introduction of *purely* emotional elements into the jury's deliberations is clearly prohibited conduct. *See* Fed.R. Evid. 403 advisory committee's note; *Polanski v. CNA Insurance Co.*, 852 F.2d 626, 630 (1st Cir.1988); *Forrestal v. Magendantz*, 848 F.2d 303, 308 (1st Cir.1988). In this case, however, admission of Doty's Vietnam experience is, as the district court noted, relevant to the issue of damages. Thus, while we agree that the violent nature of Doty's military service has emotional appeal, it also had relevancy, and it was therefore within the district court's discretion to admit it. *See supra*, pp. 8–9; Fed. R.Evid. 403.

In personal injury law, it is well settled that in an action for damages, the tortfeasor "takes his victim as he finds him." *United States v. Feola*, 420 U.S. 671, 685, 95 S.Ct. 1255, 1264, 43 L.Ed.2d 541 (1975), *rev'g United States v. Alsondo*, 486 F.2d 1339 (2d Cir.1973). *See, e.g., Rardin v. T & D Mach. Handling, Inc.*, 890 F.2d 24, 28 (7th Cir.1989) (tortfeasor liable for full extent of injury, even if unforeseeable); *Stoleson v. United States*, 708 F.2d 1217, 1221 (7th Cir.1983) (explaining eggshell skull rule); *Pierce v. Southern Pac. Transp. Co.*, 823 F.2d 1366, 1372 n. 2 (9th Cir.1987) ("[w]hen an emotional injury causes physical manifestations of distress we can see no principled reason why the eggshell plaintiff rule should not apply"); *Commonwealth v. Starling*, 382 Mass. 423, 416 N.E.2d 929 (1981); *Commonwealth v. Giacomazza*, 311 Mass. 456, 463, 42 N.E.2d 506 (1942); *Vosburg v. Putney*, 80 Wis. 523, 50 N.W. 403 (1891); W. Prosser, *Handbook of the Law of Torts* 261 (4th ed. 1971). Under this "eggshell" plaintiff rule, Local 42 was required to take Doty as it found him. Thus, the district court ruled that Doty was entitled to present evidence as to the nature of the injury inflicted by Local 42, namely the onset of post traumatic stress syndrome, an illness which had its genesis in Vietnam. Local 42 did not object to that ruling when given, and it cannot now argue that Doty's preexisting physical condition is irrelevant.

### D. *References to Sewall Carrying a Weapon*

■ Local 42 next argues that, at trial, Doty introduced evidence tending to show that Sewall carried a gun, that the evidence was prejudicial, and that it was intended only to incite the passions and prejudices of the jury. We, like the district court, disagree.

In the first of the instances in which the weapon was mentioned, the witness slipped in a reference to a gun without probing by counsel. The court ruled that the testimony was inadmissible, and offered, at the close of all the evidence, to instruct the jury to disregard the statement. This offer was never accepted. Instead, Local 42 moved for a mistrial on the grounds that the mention of the gun was so prejudicial that a curative instruction would not suffice to cure the damage done. The district court, using its discretionary powers, denied the motion. *See, e.g., Standard Indus., Inc. v. Mobile Oil Corp.*, 475 F.2d 220, 228–29 (10th Cir.) ("matter of declaring mistrial, or not, because of improper, voluntary statements of a witness" is "of necessity . . . a matter peculiarly within the sound discretion of the trial judge"), *cert. denied*, 414 U.S. 829, 94 S.Ct. 55, 61, 38 L.Ed.2d 63 (1973). Upon review, we find no abuse of discretion.

■ Nor can we say that the one other gun reference of which Local 42 complains on appeal was unfairly prejudicial or irrelevant. In that second reference, Doty offered testimony to prove he knew that Sewall carried a gun to union meetings. This testimony was offered to discredit Sewall's contention that Doty assaulted him, rather than the reverse, as Doty alleged. The district court, holding that the evidence was relevant to Doty's state of mind at the time of the assault, allowed its introduction. Within the context in which the testimony occurred, we think that the testimony was highly probative, because Doty's awareness that Sewall was regularly armed made it less probable that he, being

unarmed, would attack someone carrying a gun. The district court is charged with the responsibility to balance the dangers of unfair prejudice against the probative value of the evidence. Fed.R.Evid. 403. Upon review, we cannot say that the admission of this evidence amounted to an abuse of discretion on the part of the district court. *See, e.g., United States v. Ladd,* 885 F.2d 954, 959 (1st Cir.1989); *United States v. Southard,* 700 F.2d 1, 13 (1st Cir.), *cert. denied,* 464 U.S. 823, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *United States v. Gonsalves,* 668 F.2d 73, 75 (1st Cir.), *cert. denied,* 456 U.S. 909, 102 S.Ct. 1759, 72 L.Ed.2d 168 (1982); *United States v. De Vincent,* 546 F.2d 452, 457 (1st Cir.1976), *cert. denied,* 431 U.S. 903, 97 S.Ct. 1694, 52 L.Ed.2d 387 (1977).

## III. DELAYED TRANSFER CLAIM

■■■■ In an action taken under the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 153, *et seq.,* we accept the union constitution as written, including its requirements for membership, because it constitutes a contract between the parties. *See Gray v. International Ass'n of Heat & Frost Insulators & Asbestos Workers, Local No. 51,* 447 F.2d 1118, 1120–21 (6th Cir.1971); *Woods v. Local Union No. 613, International Brotherhood of Electrical Workers,* 404 F.Supp. 110 (N.D.Ga.1975). In this case, Article 18 of the union constitution provided:

> It shall be compulsory for a member working under the jurisdiction of another Local Union to procure a transfer card from the Local Union of which he is a member, and to deposit the same with the Local Union under whose jurisdiction he is working.

The constitution also required the secretary-treasurer of the Local into which an individual sought to transfer, in this case Local 42, to certify to the transferring union, that the member would be eligible for work within its jurisdiction upon issuance of a transfer card. Thus, an individual

cannot simultaneously be a member of more than one Local Union. The jury found that Local 42 unlawfully delayed Doty's transfer from another Local[5] to Local 42, and awarded damages accordingly. Local 42 contends that the evidence did not support this verdict, and thus it alleges that either a judgment notwithstanding the verdict or a new trial should have been granted relative to this issue. We find this argument to be without merit.

It is uncontested that, prior to his procurance of employment within Local 42's jurisdiction, Doty worked within the jurisdiction of Local 49, received a membership card from Local 49, and paid union dues to Local 49. Local 42 essentially argues that, upon application of Doty, Sewall attempted to transfer Doty into Local 42 by making the required certification to Local 49, but Local 49 refused to complete the transfer. Since the union constitution prohibits simultaneous membership in more than one Local, Local 42 contends that the only reasonable conclusion which the jury could have reached was that Sewall could not have completed Doty's transfer until his membership in Local 49 was deleted.

Contrary to Local 42's assertion, the evidence demonstrates that, under the union constitution, Doty satisfied all the requirements for union membership. Indeed, the International Brotherhood of Teamsters Executive Board agreed with this conclusion:

> Pursuant of Article XVIII of the International Constitution, Brother Doty should have been admitted into Local 42 either as a transfer or as a new member in April 1981. By that time he had established permanent employment at the craft within the local's jurisdiction and had completed an application for membership.

Moreover, Doty's testimony was that he repeatedly requested Sewall to make the required certification to his previous Local or Locals, but that, despite these requests,

---

5. The dispute appears to center around whether Doty was a member of Local 49, which did not have him listed, or Local 829. Sewall at one time inquired about Doty's membership status at Local 49, but, despite Doty's assertions that he was requesting a transfer from Local 829, Sewall did not make a request for transfer from that Local.

Sewall refused to do so. According to one witness, Sewall even admitted that he made no effort to effectuate Doty's transfer for almost three years. Thus, Doty contends that there was sufficient evidence to permit the jury to conclude that his transfer into Local 42 was intentionally delayed.

■ It is beyond peradventure that, when there are two permissible views of the evidence, the trier of fact's acceptance of one of them cannot be clearly wrong. *E.g., Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). This is particularly so where, as here, the findings turn on the credibility of witnesses. *See O'Brien v. Papa Gino's of America, Inc.,* 780 F.2d 1067 (1st Cir.1986); *General Dynamics Corp. v. Occupational Safety & Health Review Comm'n,* 599 F.2d 453 (1st Cir.1979). The jury was entitled to believe Doty's version of the delayed transfer claim rather than that of Local 42, and for that reason, we find no error in the district court's refusal to grant a JNOV or a new trial on this issue.

## IV. EXHAUSTION OF INTERNAL UNION REMEDIES

Local 42 next claims that the district court should have declined to accept jurisdiction over the delayed transfer claim on the basis that the claim was barred due to Doty's failure to exhaust internal union remedies prior to instituting suit. Local 42 also argues that, having accepted jurisdiction, the district court compounded the error by failing to submit the exhaustion issue to the jury. Article 19, section 12(c) of the union constitution makes exhaustion of intra-union remedies a prerequisite to commencement of a civil suit.[6] That section provides:

> Every member ... against whom adverse rulings or decisions have been rendered or who claims to be aggrieved, shall be obliged to exhaust all remedies provided for in this Constitution and by the International before resorting to any court, tribunal, or agency against the International Union, any subordinate body or any officer or employee thereof.

Local 42 contends that Doty failed to pursue section 12(a) remedies until after instituting civil suit, and thus that the suit should have been dismissed.

■ Local 42 raised the exhaustion issue as an affirmative defense, and thus bore the burden of proving not only the existence of an adequate intra-union remedy, but also Doty's failure to pursue that remedy for the statutorily-permitted period of four months. 29 U.S.C. § 411(a)(4). The district court determined that further exhaustion efforts were not required because: (1) Teamster procedures could not afford Doty complete relief because they did not provide for damages to an aggrieved member; (2) Doty attempted to obtain intra-union relief for two years prior to filing suit;[7] (3) and, because of union hostility toward Doty, further attempts to obtain intra-union relief would have been futile.

Title 29, United States Code, Section § 411(a)(4) "does not establish a jurisdictional bar or absolute waiver to judicial review, but preserves the discretionary exhaustion doctrine which allowed pre-LMRDA courts to determine whether pursuit of internal remedies should be required in a given case." *Fulton Lodge No. 2 of International Ass'n of Machinists and Aerospace Workers v. Nix,* 415 F.2d 212, 216 (5th Cir.1969). Upon careful review of the record, we find no abuse of discretion in the district court's determination that further exhaustion of intra-union remedies was not required.

6. Section 101(a)(4) of the Landrum–Griffin Labor Reform Act, 29 U.S.C. § 411(a)(4), while not itself imposing an obligation on union members to exhaust intra-union remedies, does allow a union to impose an exhaustion requirement of four months' duration.

7. Although it is possible that Doty did not follow all the procedures specified by the Union, "[a]

concentrated effort to comply with the spirit of intraunion remedies available," *Woods v. Local 613, International Brotherhood of Electrical Workers,* 404 F.Supp. at 115, will satisfy § 411(a)(4)'s exhaustion requirement. *See Detroy v. American Guild of Variety Artists,* 286 F.2d 75, 81 (2d Cir.1961); *Fulton Lodge No. 2, Int'l Ass'n of Machinists & Aerospace Workers v. Nix,* 415 F.2d 212, 216 (5th Cir.1969).

## V. PUNITIVE DAMAGES

■ Local 42 claims that awards of punitive damages are prohibited in fair representation cases brought pursuant to section 301 of the LMRDA, *International Bhd. of Electrical Workers v. Foust*, 442 U.S. 42, 52, 99 S.Ct. 2121, 2127, 60 L.Ed.2d 698 (1979), both because the award of punitive damages could impair the financial stability of unions, and because the objectives of federal labor laws are essentially remedial. *Id.* at 50–52, 99 S.Ct. at 2126–27. While *Foust* did not foreclose the possibility of punitive damages awards under Landrum–Griffin, Local 42 urges that this court adopt a *per se* prohibition against such awards for the same reasons underlying *Foust.* We are not so inclined.

■ In declining to adopt such a prohibition, we note that it is clear that punitive damages are available to deter malicious violations of the LMRDA. *E.g., International Bhd. of Boilermakers v. Braswell*, 388 F.2d 193, 200 (5th Cir.), *cert. denied*, 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854 (1968); *Vandeventer v. Local 513, Int'l Union of Operating Engineers*, 579 F.2d 1373, 1379–80 (8th Cir.) (decision to award punitive damages rests with the jury), *cert. denied*, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978); *Bise v. International Brotherhood of Electrical Workers*, 618 F.2d 1299, 1305 (9th Cir.1979), *cert. denied*, 449 U.S. 904, 101 S.Ct. 279, 66 L.Ed.2d 136 (1980); *Morrissey v. National Maritime Union*, 544 F.2d 19, 25 (2d Cir. 1976). In this case, the district court properly concluded that the jury's verdict for punitive damages was both warranted and reasonable.[8]

## VI. EXCESSIVE VERDICT WARRANTS NEW TRIAL

■ While the jury is the initial arbiter of damages, Local 42 contends that district courts must grant a new trial if the damage award is " 'grossly excessive', 'inordi-

nate', 'shocking to the conscience of the court' or 'so high that it would be a denial of justice to permit it to stand.' " *McDonald v. Federal Laboratories*, 724 F.2d 243, 246 (1st Cir.1984) (quoted in *Laaperi v. Sears, Roebuck & Co.*, 787 F.2d 726, 734 (1st Cir.1986)). Local 42 essentially argues that, in the instant case, an award of $250,000 in compensatory damages and $300,000 in punitive damages exceeds these boundaries of reasonableness and warrants a new trial.

Ordinarily, a "verdict will be reduced or set aside only if it is shown to exceed 'any rational appraisal or estimate of the damages that could be based upon the evidence before the jury.' " *Segal v. Gilbert Color Systems, Inc.*, 746 F.2d 78, 81 (1st Cir.1984) (quoting *Glazer v. Glazer*, 374 F.2d 390, 413 (5th Cir.), *cert. denied*, 389 U.S. 831, 88 S.Ct. 100, 19 L.Ed.2d 90 (1967), quoted with approval in *Kolb v. Goldring, Inc.*, 694 F.2d 869, 872 (1st Cir.1982)). There is, however, an upper limit to this deference, and the question of whether that limit has been exceeded is a question of law. *See Laaperi v. Sears, Roebuck & Co.*, 787 F.2d at 734; *Dagnello v. Long Island R.R.*, 289 F.2d 797, 806 (2d Cir.1961). Upon careful analysis, we find that the jury verdict does not exceed the bounds of rationality.

The jury was entitled to find that Doty suffered severe emotional and physical problems, as well as medical expenses, as a result of Local's conduct. An award of $250,000 in compensatory and an award of $300,000 in punitive damages is not so shocking to this court as to warrant a new trial or reduction in damages.

## VII. DENIAL OF PREJUDGMENT INTEREST

The last issue which we must discuss is the district court's decision to deny the award of prejudgment interest on the compensatory damages awarded for the two

---

**8.** Moreover, upon review, we agree with the district court's conclusion that the punitive damage award was not excessive. In this case, the jury was entitled to conclude that Doty was excluded from some type of union activities for three years, and was ultimately removed from his position as union steward because of his inability to secure a transfer. We note also that, where a jury has found suppression of a union member's efforts to expose corrupt union practices, the award of punitive damages may help to deter similar union conduct.

pendent state law claims under the Massachusetts Civil Rights Act ("MCRA") and the common law of battery.

■■■ Doty contends that the issue of whether the addition of prejudgment interest to damages awarded by a jury on state law claims adjudicated in federal court is mandatory or permissive must be determined with reference to state law. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079, *reh'g denied*, 326 U.S. 806, 66 S.Ct. 7, 90 L.Ed. 491 (1945). Indeed, it is well settled that the application of *Erie* is not limited to cases in which federal jurisdiction is based on diversity of the parties, but is also extended to actions in which federal jurisdiction is conferred on pendent grounds to state law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 722, 86 S.Ct. 1130, 1136, 16 L.Ed.2d 218 (1966). Thus, as this court has recently noted, "[w]hen a Plaintiff secures a jury verdict based on state law, the law of that state governs the award of prejudgment interest." *Aubin v. Fudala*, 782 F.2d 287, 289 (1st Cir.1986), *later app.*, 821 F.2d 45 (1987). *See also Jennings v. Dumas Pub. School Dist.*, 763 F.2d 28, 33 (8th Cir.1985).[9]

■■■ But this is a different case. Here, the claims made under the LMRDA and MCRA are identical and rely upon the same set of facts. Indeed, examination of the special verdict form makes it clear that damages for the two claims were provided generally, and were not segregated into separate federal and state components. *See Wojtkowski v. Cade*, 725 F.2d 127 (1st

Cir.1984). Ordinarily, where the component of state law damages is not clearly discernable, it is appropriate for the district court to consider federal standards in determining the propriety of prejudgment interest. *Conway v. Electro Switch Corp.*, 825 F.2d 593 (1st Cir.1987).[10] But where, as here, the claims under federal and state law, and the damages awarded therefore, are identical, a plaintiff is entitled to select the body of law under which the damages will be paid. *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1345 (1st Cir. 1988).

> Nor does the fact that the damages held to be recoverable under ... [state law] largely replicated those recoverable under ... [federal law] disqualify plaintiff from receipt of prejudgment interest on the common portion of the award. To be sure, a plaintiff is entitled to only one full recovery, no matter how many different legal grounds may support the verdict ... but there is no basis for allowing the losing party to pick which of the overlapped awards it prefers to pay. In collecting the fruits of his victory, ... [plaintiff] was concededly entitled to only a single slice of the pie—but the choice of the slice was his.

*Id.* Under Massachusetts law, it is clear that Doty was entitled to an award of prejudgment interest on his MCRA claims. *See* Mass.Gen.Laws ch. 231, § 6B. The same must be said for Doty's common law assault claim. Thus, we reverse the district court's recision of its award of prejudgment interest, and award prejudgment interest at the rate specified in Mass.Gen. Laws ch. 231, § 6B.

**9.** Under Massachusetts law, damage awards for tortious conduct are governed by Mass.Gen. Laws ch. 231, § 6B:

> In any action in which a verdict is rendered or a finding made or an order for judgment made for pecuniary damages for personal injuries to the plaintiff or for consequential damages, or for damages to property, *there shall be added by the clerk of court to the amount of damages interest* thereon at the rate of twelve per cent per annum *from the date of commencement of the action* even though such interest brings the amount of the

verdict or finding beyond the maximum liability imposed by law.

**10.** Although the district court later reversed itself, it initially held that, under state law, prejudgment interest was mandated on compensatory damage award, though not on the punitive award because punitive damages were not available under state law. Upon review, we find that *Wojtkowski v. Cade*, 725 F.2d 127, would not have permitted such a result. The fact that the claims under the MCRA and the LMRDA were identical does not permit us to conclude that prejudgment interest was mandatory.

## VIII. CONCLUSION

For the reasons specified above, we *affirm* the district court's decision on all grounds, with the single exception of its denial of prejudgment interest on the compensatory damages awarded for the two pendent state law claims under the MCRA and the common law of battery. On that issue, we reverse, and order prejudgment interest at the rate specified in Mass.Gen. Laws ch. 231, § 6B.

*Affirmed* in part, *reversed* in part. Costs to be borne by defendants.