USCA1 Opinion

 

 April 25, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1774 G. ROCKETT & SONS, INC., AND BRIAN ROCKETT, Plaintiffs - Appellants, v. WINTER HARBOR FISHERMAN'S COOP, INC., Defendant - Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Selya and Stahl, Circuit Judges. ______________ _____________________ Peter Panaro on brief for appellants. ____________ Michael L. Ross on brief for appellee. _______________ ____________________ ____________________ Per Curiam. Plaintiffs-appellants, G. Rockett & Sons, Per Curiam __________ Inc., and Brian Rockett, appeal a jury verdict in favor of defendant-appellee, Winter Harbor Fisherman's Coop, Inc., on plaintiffs' complaint and defendant's counter suit. Judgment was entered by the district court in the amount of $99,360.35 against G. Rockett & Sons, Inc., for breach of contract, and in the amount of $15,000 against G. Rockett & Sons, Inc., and Brian Rockett, jointly and severally, for conversion and unjust enrichment. We affirm. BACKGROUND BACKGROUND Winter Harbor Fisherman's Coop, Inc. ("Winter") is a fisherman's cooperative, located in Winter Harbor, Maine, which sells live lobsters at market wholesale cost to wholesalers. G. Rockett & Sons, Inc. ("Rockett & Sons") is a wholesaler of lobsters which contracts with suppliers of lobsters and delivers them to its customers in the Northeast. In December of 1992, Brian Rockett ("Rockett"), an officer1 and employee of Rockett and Sons, reached an oral agreement with Winter's manager and bookkeeper, Becky Utecht-Towle ("Utecht-Towle"), for Rockett & Sons to purchase 26,000 pounds of lobsters from Winter. The lobsters were to be sold in three shipments on a cash and carry basis. The purchase price was $39,423.90 for the first shipment, $34,502.50 for the second shipment, and $27,223.45 for the third shipment, for a total of $101,860.35 (including a $711.50 balance  ____________________ 1 Although Rockett signed an affidavit expressly stating that he is an officer of Rockett & Sons, he nevertheless argued at trial, and again on appeal, that he is not an officer of the company. He has offered no reason, however, why we should disregard his own sworn statement to the contrary. due on a previous transaction). Rockett picked up the three shipments of lobsters on December 22nd, 27th and 29th, respectively. He paid Winter $14,600 in cash, and paid the remainder due on the first two shipments by two corporate checks dated December 28, 1992, and December 29, 1992. Rockett eventually stopped payment on the two corporate checks, and has never paid for the third shipment. Instead, Rockett & Sons and Rockett filed the instant lawsuit alleging that they received non-conforming goods in the first two shipments. Specifically, Rockett & Sons alleged that Winter breached the contract because the lobsters in the first shipment were below weight specifications and because most of the lobsters in the second shipment were freezing or frozen. W i n t e r thereafter filed suit against Rockett and Rockett & Sons for breach of contract, unjust enrichment and conversion. The two suits were consolidated and tried to a jury. On May 26, 1994, the jury returned a verdict for Winter on its breach of contract claims, finding that Rockett and Sons breached its agreement to pay Winter for the three shipments of lobsters. The jury also returned a verdict for Winter on its conversion and unjust enrichment claims, finding that Rockett and Rockett & Sons had converted Winter's lobsters and/or lobster crates and been unjustly enriched by the same. The court entered judgment against Rockett & Sons on the contract claims in the amount of $99,360.35, and against Rockett & Sons and Brian Rockett, jointly and severally, on the conversion and unjust -3- enrichment claims in the amount of $15,000. This appeal followed. DISCUSSION DISCUSSION Appellants raise a number of issues on appeal. We address them seriatim. I. Insufficiency of the Evidence I. Insufficiency of the Evidence _____________________________ Appellants maintain that the evidence presented at trial was legally insufficient for a reasonable jury to find that Rockett & Sons breached the contract as to the first shipment of lobsters. They also maintain that the evidence was insufficient for a reasonable jury to find that either Rockett or Rockett & Sons converted Winter's lobster crates and was therefore unjustly enriched. To challenge the sufficiency of the evidence on appeal, a party is required, at the close of the evidence, to move for judgment as a matter of law and, if that motion is denied, to renew the motion after the jury verdict. See Vel zquez v. ___ _________ Figueroa-G mez, 996 F.2d 425, 426-27 (1st Cir. 1993); Fed. R. ______________ Civ. P. 50. A motion for judgment as a matter of law must be made with sufficient particularity to explain why the evidence is insufficient, and the moving party may appeal only on the grounds stated in the motion. Vel zquez, 996 F.2d at 427. A motion for _________ judgment as a matter of law, after a jury verdict, must be made "not later than ten days after judgment." Fed. R. Civ. P. 50(b). Appellants moved for judgment as a matter of law at the close of the evidence. They maintain that they also moved for judgment as -4- a matter of law after the jury rendered its verdict. The record does not support this contention. After the jury returned its verdict, the following colloquy took place between counsel for appellants and the court. MR. PANARO: Yes your honor. Just to make a motion. I would make a motion for verdict for the defendant, I'm sorry, verdict for Rockett, notwithstanding the verdict in the amount of -- what I'm trying to do is make a motion to set aside that portion of the verdict which states $15,000 for unjust enrichment on the part of G. Rockett & Sons and Brian Rockett, and also to set aside that portion of the verdict of $39,800 [sic] and some odd as being against the weight of the evidence in the case. THE COURT: After I enter judgment in the case, Mr. Panaro, you obviously are free to file post judgment motions and you should do that in writing. At this point I'm simply inviting counsel, to the extent that you wish to, to comment before I indicate the amount that is to be entered in the judgment in favor of [Winter]. Appellants never took the court's invitation to file post judgment motions, in writing or otherwise. The above discussion does not constitute a proper Rule 50(b) motion. The district court judge clearly indicated to counsel that he was not treating his statements as a post-trial motion. In addition, defense counsel's statement is insufficient by itself because it does not state with sufficient particularity -- indeed, with any particularity -- why the evidence was insufficient. The attempted motion did not provide a basis upon which the district court could rule, and, consequently, we have no district court -5- decision to consider. See Wells Real Estate v. Greater Lowell ___ _________________ ______________ Bd. of Realtors, 850 F.2d 803, 810 (1st Cir. 1988).2 _______________ Appellants did not move for a new trial under either Rule 50 or Rule 59 of the Federal Rules of Civil Procedure. Having failed to move, after the verdict, for judgment as a matter of law and/or a new trial, appellants are precluded from appealing the sufficiency of the evidence to this court. See id. ___ __ at 810-11. Accordingly, we only address appellants' arguments concerning alleged errors by the trial court. II. The Conversion and Unjust Enrichment Verdicts II. The Conversion and Unjust Enrichment Verdicts _____________________________________________ The jury initially found Rockett liable on the conversion and unjust enrichment counts, but found that Rockett & Sons was not liable on those counts. The jury awarded Winter $15,000 but apportioned that award equally between Rockett and ___ Rockett & Sons. The district court properly found that the verdict and the apportionment of damages were inconsistent. Accordingly, the court explained the inconsistency to the jury and asked them to resolve it with reference to the jury instructions. The court then asked them to return to deliberate further. Counsel for appellants did not object to the court's supplemental instructions. In its subsequent verdict, the jury found that both Rockett and Rockett & Sons had converted Winter's lobsters and/or  ____________________ 2 This is not a case, therefore, where appellants either were misled by the trial judge or substantially complied with Rule 50. Accordingly, they do not fit within the very narrow "substantial compliance" exception. See Jusino v. Zayas, 875 F.2d 986, 991 ___ ______ _____ n.6 (1st Cir. 1989) (citations omitted). -6- lobster crates and that both had been unjustly enriched. The jury found that Winter suffered damages of $15,000 as a result of this conduct, but that no portion of that $15,000 was a result of Rockett & Sons' conduct alone. The court entered judgment in the amount of $15,000 against Rockett and Rockett & Sons, jointly and severally. Appellants maintain that the jury's finding that both appellants had converted Winter's property, but that none of Winter's damages were caused by Rockett & Sons' conduct alone, "shows the jury was confused regarding the charge of conversion and is otherwise unreasonable, inconsistent, against the weight of the evidence and contrary to the judge's instructions on the law." As explained above, by not moving for judgment notwithstanding the verdict, appellants have waived their right to challenge the sufficiency of the evidence. We therefore address only the question of whether the verdict was inconsistent or contrary to the judge's instructions. The verdict was not inconsistent under Maine law. It was stipulated at trial that Rockett was acting as an agent of Rockett & Sons. Under Maine law, the jury could conclude that Rockett converted the lobsters and/or crates and that he was acting within the scope of his employment with Rockett & Sons. See McLain v. Training & Dev. Corp., 572 A.2d 494, 497-98 (Me. ___ ______ ______________________ 1990). The jury could determine that the damages were caused by Rockett's conduct alone, but he was acting as an agent for Rockett & Sons at the time. The jury could therefore conclude -7- that Rockett and Rockett & Sons were jointly and severally liable for the $15,000 in damages, even though the damages were not the result of Rockett & Sons' conduct alone.  _____ Nor was the verdict contrary to the judge's instructions. With respect to the claim for conversion, the court instructed the jury as follows: The Co-op also claims that Rockett & Sons and Brian Rockett converted its property, namely, its lobsters and 100 wooden crates. To prove conversion, the Co-op must establish that Rockett & Sons have wrongfully taken or retained property belonging to the Co-op. The Co-op need not prove that Rockett & Sons and Brian Rockett knew or intended to convert the Co-op's property, only that they came to have custody of property belonging to the Co-op when they had no right to the property. Of course, if you find that Rockett & Sons was entitled to possession of the lobsters under the contract, then neither it nor Brian Rockett is liable for conversion of the lobsters. If, however, you determine that Rockett & Sons was not entitled to possession of the lobsters under the contract due to its fraud in __________________ procuring delivery of the lobsters, then you may find that Rockett & Sons and Brian Rockett are liable for conversion of the lobsters. Appellants argue that this instruction only allows a finding of conversion if the jury finds fraud in the procuring of the lobsters, and that, since the jury found no fraud, the verdict was inconsistent. The court instructed the jury to consider all of the instructions together, and not to single out any one instruction. The conversion instruction explained that -8- Winter need not prove that Rockett & Sons and Rockett "knew or intended to convert" Winter's property, only that they came to have possession of that property when they had no right to it. The mention of fraud merely indicates that, in addition, if they had possession of Winter's property through fraud, that would suffice for conversion. We find no inconsistency in the verdict. III. Violation of Sequestration Order III. Violation of Sequestration Order ________________________________ Appellants assert that the district court committed reversible error by allowing a witness for the appellee, Michael Faulkingham ("Faulkingham"), to testify after he admittedly violated the court's sequestration order. The district court thoroughly explored this issue at trial. The court allowed counsel for appellants to voir dire Faulkingham on the record about what he heard while in violation of the court's order. The court also conducted a voir dire of Faulkingham. Faulkingham testified on voir dire that he was in the courtroom for about ten minutes during the direct and cross-examinations of appellee witness, Michael Kramp ("Kramp"), and then left when he was informed that he was not allowed to be in the courtroom. Faulkingham told the court what he heard Kramp testify about. Counsel for Winter then told the court the questions he would ask Faulkingham. The court determined that there was no overlap in the two areas of questioning and allowed Faulkingham to testify. Counsel for Winter asked Faulkingham thirteen questions on direct -9- examination, seven of which were foundational. None of the questions related to anything Faulkingham testified he heard Kramp testify about. The appropriate sanction for breach of a sequestration order is ordinarily left to the district court's discretion. See United States v. Cox, 752 F.2d 741, 748 (1st ___ _____________ ___ Cir. 1985). Appellants have not shown that the measures adopted by the district court were inappropriate or that the violations were so significant as to warrant departure from this ordinary rule. Finally, appellants have not shown how they were prejudiced by Faulkingham being allowed to testify. We conclude that the district court did not abuse its discretion in allowing Faulkingham to testify. IV. Prejudicial Remarks IV. Prejudicial Remarks ___________________ Appellants allege that certain statements made by counsel for appellee during closing argument were unfairly prejudicial and deprived appellants of a fair trial. Appellants point to the following statements by counsel for appellee: 1) counsel described Rockett as a "con artist", and the breach of contract as a "con"; 2) counsel referred to Winter as the "little fishermen's Co-op in Maine" and stated that "we don't need anymore of this here in Maine"; 3) and counsel stated that Rockett "makes more money in one deal than the Co-op makes in a couple of years." Appellants did not object during or after appellee's closing argument, therefore, we review only for plain error. United States v. Rodr guez-Estrada, 877 F.2d 153, 158 ______________ _________________ (1st Cir. 1989); Wildman v. Lerner Stores Corp., 771 F.2d 605, _______ ___________________ -10- 609 (1st Cir. 1985) ("Counsel cannot play a waiting game and after an adverse verdict is rendered raise an objection to argument for the first time.") (citations omitted). We find no plain error in counsel's remarks. The description of Rockett as a "con artist" is not unduly prejudicial since the complaint charged him with fraud. Moreover, the jury determined that Rockett did not defraud Winter, and, thus, presumably rejected counsel's characterization of Rockett as a "con artist" and the breach as a "con." None of the other statements by counsel were such that a new trial is required to prevent a miscarriage of justice. See Fed. R. Civ. P. 61; Wildman, 771 F.2d at 609.   ___ _______ V. Evidentiary Issues V. Evidentiary Issues __________________ Appellants list twenty-one instances in which the district court allegedly admitted evidence erroneously. Appellants assert that these errors, taken together, denied appellants a fair trial and warrant a new trial. We need not linger long over this argument. "[T]he admission and exclusion of evidence is primarily within the discretion of the trial judge, and this determination will not be disturbed absent a showing of abuse of discretion." Doty v. Sewall, 908 F.2d 1053, ____ ______ 1058 (1st Cir. 1990) (quoting Harrington v. United States, 504 __________ ______________ F.2d 1306, 1313 (1st Cir. 1974)). We have reviewed each assignment of error and find no abuse of the district court's broad discretion, certainly none which rises to the level of affecting appellants' substantial rights. See Farr Man & Co., ___ ________________ Inc. v. M/V Rozita, 903 F.2d 871, 875 (1st Cir. 1990); Fed. R. ____ __________ -11- Civ. P. 61. CONCLUSION CONCLUSION We have considered appellants' other contentions of error and find none meriting further discussion. The verdict and judgment are affirmed. ________ -12-